A. Melissa Johnson (187455)
Marilynn Mika Spencer (149941)
**Spencer Johnson McCammon llp**
2727 Camino del Rio South, Suite 140
San Diego, California 92108
(619) 233-1313 telephone

David J. Duchrow (105617)
**Law Office of David J. Duchrow**
2510 Main Street, Suite 205
Santa Monica, CA 90405
(310) 452-4900

Michael F. Baltaxe (129532)
Timothy B. Sottile (127026)
Payam I. Aframian (299345)
Victoria V. Felder (304894)
**Sottile Baltaxe**
4360 Park Terrace Drive, Suite 140
Westlake Village, CA 91361
(818) 889-0050 Telephone

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**SAN DIEGO, CALIFORNIA**

| | |
|---|---|
| Said ABIYOW; Tegest ALEMU; Kashindi ALULU; Nyota BOKESE; Shabani BOKESE; Maymun EGAL; Abdi HUSSEIN; Fatuma IBRAHIM; Abdinur JAMA; Mohamed Osman JAMA; Shukari JAMA; Kerai MBERWA; Abdi Hagi MODOWE; Lul MOHAMED; Mohammed MOHAMMED; Bare Mahamed MUSSE; Abdi MWECHIWA; Lucy NYIRARWAKA; Hassan OMAR; | Case No: **'19CV1052 H   JLB**<br><br>**COMPLAINT FOR VIOLATIONS OF 42 U.S.C. §1981**<br><br>**JURY TRIAL DEMANDED** |

Spencer Johnson McCammon llp

1

Ananie RUGENZA; Mohamud H.
SALAD; Mohamud Abdi SHURE; Ali
Hussein SHURIYE; Semir Desta
TESEMA; Abdullahi WARSAME;
Abdi Omar YUSAF,

         Plaintiffs,

v.

Bristol Bay Native Corporation;
Glacier Technical Solutions, LLC; and
Workforce Resources, LLC,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

## **PRELIMINARY STATEMENT**

1.     Plaintiffs Said Abiyow, Tegest ALEMU ("Alemu"), Kashindi ALULU ("Alulu"), Nyota BOKESE ("Nyota Bokese"), Shabani BOKESE ("Shabani Bokese"), Maymun EGAL ("Egal"), Abdi HUSSEIN ("Hussein"), Fatuma IBRAHIM ("Ibrahim"), Abdinur JAMA ("Abdinur Jama"), Mohamed Osman JAMA ("Mohamed Jama"), Shukari JAMA ("Shukari Jama"), Kerai MBERWA ("Mberwa"), Abdi Hagi MODOWE ("Modowe"), Lul MOHAMED ("Mohamed"), Mohammed MOHAMMED ("Mohammed"), Bare Mahamed MUSSE ("Musse"), Abdi MWECHIWA (Mwechiwa), Lucy NYIRARWAKA ("Nyirarwaka"), Hassan OMAR ("Omar"), Ananie RUGENZA ("Rugenza"), Mohamud H. SALAD ("Salad"), Mohamud Abdi SHURE ("Shure"), Ali Hussein SHURIYE ("Shuriye"), and Abdi Omar YUSAF ("Ysuaf") are all members of a racial or ethnic minority and are therefore entitled to the protections of 42 U.S.C. §1981.

2.     This is an employment discrimination, harassment and retaliation case, brought pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

COMPLAINT

3.    All Plaintiffs were employed at all relevant times by defendants Bristol Bay Native Corporation ("Bristol Bay"), Glacier Technical Solutions, LLC ("GTS"), and Workforce Resources, LLC ("Workforce").  These Defendants will, at times, be referred to as "Employer Defendants."

4.    Defendant Bristol Bay is an Alaskan Native Corporation based in Anchorage, Alaska.  It is the parent company of GTS and Workforce Resources.  It operates as a joint employer with GTS and Workforce Resources with respect to the allegations in this complaint by sharing or codetermining policies, human resources functions, management functions, and more.

5.    Defendant GTS is a wholly owned subsidiary of Bristol Bay and on information and belief, Plaintiffs allege that GTS maintains an office in Oceanside, California. It operated as a joint employer with Bristol Bay and Workforce Resources with respect to the allegations in this complaint by sharing or codetermining policies, human resources functions, management functions, and more.

6.    Defendant Workforce Resources is a wholly owned subsidiary of Bristol Bay and on information and belief, Plaintiffs allege that Workforce Resources maintains an office in Oceanside, California.  It operated as a joint employer with Bristol Bay and GTS with respect to the allegations in this complaint by sharing or codetermining policies, human resources functions, management functions, and more.

7.    All Plaintiffs were unnamed members of a class action entitled *Abikar vs. Bristol Bay etc.et.al.* Case No:  3:17-cv-01036-GPC-AGS. This class action contained allegations of violations of 42 USC 1981 against the same Employer Defendants. The class action was filed on May 19, 2017 and certification was denied on December 18, 2018.  All Plaintiffs accordingly had their statute of limitations tolled between May 19, 2017 and December 18, 2018.

8.    The Employer Defendants are business entities, exact form unknown, engaged in the business of providing employees to the United States Department of Defense for purpose of training Marines.

SPENCER JOHNSON McCAMMON LLP

3

COMPLAINT

9.   The Employer Defendants contract with the United States Department of Defense to help train United States Marines in African culture as well as in other cultures of interest to the military such as Iraqi, Afghani, Filipino.  To this end, the Defendants employ East African refugees as role-players to work in simulated villages as shopkeepers, village elders, insurgents, and other roles. The simulations teach Marines how to operate safely and effectively in counter-insurgency operations they may face in future combat or peace-keeping missions.

10.   All Plaintiffs are racial and ethnic minorities from East Africa. All Plaintiffs are accordingly entitled to the protections of 42 U.S.C. §1981.

11.   The Employer Defendants also employed role-players of different races and ethnicities who worked near Plaintiffs.

12.   The Plaintiffs performed most of their work for the Employer Defendants at various U.S. military bases, usually at Camp Pendleton in Oceanside, California.

13.   All plaintiffs were supervised by Habib Tarzi (Tarzi) the Site Manager for the Employer Defendants.

14.   While employed by the Employer Defendants at Camp Pendleton and other military bases, the Employer Defendants, acting through Tarzi and others, engaged in a consistent and pervasive history of discriminating against all Plaintiffs based on their race and/or ethnicity.  Each Plaintiff's race was a motivating factor in the Employer Defendants' actions towards each Plaintiff.  Such conduct violated 42 U.S.C. §1981.

15.   While employed by the Employer Defendants at Camp Pendleton and other military bases, the Employer Defendants, acting through Tarzi and others, harassed each Plaintiff and created an intimidating and hostile work environment based on each Plaintiff's race. This harassing conduct was motivated by each Plaintiff's race. Such conduct violated 42 U.S.C. §1981.

16.   This discriminatory and harassing conduct was endorsed by other management employees of the Employer Defendants including Carol Giannini, General Manager;

COMPLAINT

Weston Giannini, Scheduling Manager; Atiq Hamid, Assistant Site Manager; and David Tarzi, Deputy Project Manager.

17.   Some or all Plaintiffs complained to management of the Employer Defendants about the discrimination and harassment.  This was a protected activity as defined by 42 U.S.C. §1981.  However, Employer Defendants did nothing and the discrimination and harassment was allowed to continue.  In response, Plaintiffs were often retaliated against and the discrimination and harassment would intensify.  Such conduct violated 42 U.S.C. §1981.

18.   Beginning in or about December 2015 through approximately February 2016, many Plaintiffs filed complaints of discrimination, harassment, and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Department of Fair Employment and Housing (DFEH).  This was a protected activity as defined by 42 U.S.C. §1981.

19.   However, Employer Defendants did nothing and the discrimination and harassment was allowed to continue.  In addition, in response, Plaintiffs were often retaliated against and the discrimination and harassment would intensify.  Such conduct violated 42 U.S.C. §1981.

20.   This retaliatory conduct was endorsed by other management employees of the Employer Defendants including Carol Giannini, General Manager; Weston Giannini, Scheduling Manager; Atiq Hamid, Assistant Site Manager; and David Tarzi, Deputy Project Manager.

21.   This discrimination, harassment and retaliation included, but was not limited to: daily or near-daily insults, ridicule, scorn, mockery, and other disparagements based on Plaintiffs' race.  It included: telling some plaintiffs "What are you created from? What kind of creature created you?  Can you explain to me the color of your body?"; telling some Plaintiffs that they were "black niggers"; telling some Plaintiffs or calling them "niggers"; telling or calling some Plaintiffs "stinky black Africans"; telling some plaintiffs "your food smells bad" and "your women pee while they are standing"; telling

5

some plaintiffs that that "all Somali people smell"; telling some Plaintiffs that they "must clean because they make it dirty; that they are dirty and smelly people"; telling some Plaintiffs "You Africans bring stinky food!"; telling some plaintiffs that they were "dark skinned and slaves";  telling some Plaintiffs that "Africans are bad people" ; telling some Plaintiffs that they were "slaves" because of their African appearance and because they had a different culture; calling some Plaintiffs "slave people"; not allowing Plaintiffs access to drinking water while they were working in the sun; telling some Plaintiffs they had to take off their jilbab; refusing to allow some Plaintiffs to pray, while allowing other non-East African role players to pray; requiring Plaintiffs to perform janitorial duties that were outside their job description, but not requiring similarly situated non-East African employees to perform these duties; requiring Plaintiffs to perform cleaning and housekeeping duties that were outside their job description, but not requiring non-East African role players to perform these duties; requiring Plaintiffs to pick up trash and clean the lunchroom and portable toilets, but not requiring non-East African role players to perform these duties; keeping Plaintiffs past the end of their shift to make them clean up the lunchroom, clean the portable toilets, and pick up all the trash left by everyone, but not requiring non-East African employees to perform these duties;  making East African role players wait longer than non-East African role players for transportation; failing to provide drinking water, food and snacks to the same extent and in as favorable a manner as provided to similarly situated non-East African employees; refusing to allow some Plaintiffs to wear traditional clothing; making some Plaintiffs remove plastic water bottles from the waste receptacles of the portable toilets, with their bare hands; accusing some female Plaintiffs of "standing while they were peeing" and making a mess; failing to use East African role players for East African simulations, instead using non-East African role players; after East African role players complained about their treatment at work, Employer Defendants cancelled a contract to provide transportation for East African role players to Employer Defendants' office; and other conduct according to proof.

COMPLAINT

22.   Plaintiff Said ABIYOW worked for the Employer Defendants through July 2016.  He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi required Plaintiff Abiyow and other Plaintiffs to clean the break room, the lunchroom and restrooms, something not required of role players of other races; Tarzi made Plaintiff Abiyow and other East African role players wait longer than role players of other races for transportation between the office and IIT; Tarzi refused to allow Plaintiff Abiyow and other Plaintiffs to drive the Employer Defendants' vans between the office and IIT; Tarzi kept bottled water behind his desk and refused to allow Plaintiff Abiyow and other Plaintiffs to drink bottled water, but role players of other races were allowed to drink the bottled water; Tarzi made Plaintiffs and other East African role players remove plastic water bottles from the portable toilets, something not required of role players of other races; Tarzi would make Plaintiff Abiyow and other East African role players clean the grounds and portable toilets, something not required of role players of other races; Tarzi would make Plaintiff Abiyow and other East African role players clean the messes previously left by role players of other races; Tarzi would make Plaintiffs stay late and clean, something not required of role players of other races; Tarzi refused to allow, or made it difficult, for Plaintiff Abiyow and other Plaintiffs to pray, while allowing non-African role players to pray without difficulty or interrpution; Tarzi would make fun of the East African role players' food, and even threw it in the trash, saying it smelled bad; Tarzi would talk about female East African role players, calling them smelly, saying that they pee standing up, and talked about their undergarments; Tarzi, referring the East African role players, would say "You guys are dirty and nasty"; Tarzi called the East African role players "slave people"; Tarzi would cut lunches of Plaintiff Abiyow and other East African role player short by telling them to go back to work, but would allow role players of other races to continue eating; Tarzi improperly accused the East African role players of stealing a gun used in role play and refused to allow them to leave; Tarzi refused to provide snacks to East African role players the

COMPLAINT

same as he provided them to non-East African role players; Tarzi would require East African role players to work in the rain and extreme heat, but did not require this of role players of other races; when a role play scenario called for East African role players, Employer Defendants sometimes called non-East African role players to fill the roles; Employer Defendants refused to provide promotional opportunities to Plaintiff Abiyow; and other conduct according to proof.

23.   Plaintiff TEGEST ALEMU worked for the Employer Defendants through 2016. She was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at her and the other Plaintiffs; Tarzi required Plaintiff Alemu and other Plaintiffs to clean the break room, the lunchroom and restrooms, something not required of role players of other races, who were allowed to wait in vehicles; Tarzi refused to allow Plaintiff Alemu and other Plaintiffs to drink bottled water; Tarzi made Plaintiff Alemu on and other Plaintiffs remove plastic water bottles from the portable toilets; Tarzi would make fun of the Plaintiff Alemu's and other Plaintiffs' food; Tarzi did not allow Plaintiff Alemu and other Plaintiffs to use their cell phones; Tarzi made fun of Plaintiff's dress; and other conduct according to proof.

24.   Plaintiff KASHINDI ALULU worked for the Employer Defendants through 2016.  He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi would make fun of the Plaintiff Alulu's and other Plaintiffs' food; Tarzi would say to Plaintiff Alulu and others Plaintiffs "you guys are dirty and nasty"; Tarzi would refer to Plaintiff Alulu and others Plaintiffs as "nasty Africans"; Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi made Plaintiff Alulu and other East African role players end their breaks early, but not role players of other races; Plaintiff Alulu was present when Tarzi told some female Plaintiffs that "African women stand when they pee and they were making a mess in the bathroom"; Tarzi would require Plaintiff Alulu and other Plaintiffs to stay outside and work in the hot sun, something not required of role players of other races; Tarzi would require

COMPLAINT

Plaintiff Alulu and other Plaintiffs to stay out and work in the rain, Tarzi would then say "his people" could go into a house but the "slave people," which included Plaintiff Alulu and other Plaintiffs, were required to stay outside; Tarzi refused to allow Plaintiff Alulu and other Plaintiffs to drink bottled water; Tarzi told plaintiff Alulu when he asked for water: "you are not the type of people who get this water"; Tarzi also said: "you will never come and ask me again"; Tarzi would make Plaintiff Alulu and other Plaintiffs clean the breakroom, outside areas, and portable toilets, something not required of role players of other races; Tarzi would make Plaintiff Alulu and other Plaintiffs stay late and clean, something not required of role players of other races; Tarzi refused to allow, or made it difficult, for Plaintiff Alulu to pray, while allowing non-African role players to pray; Tarzi would make Plaintiff Alulu and other Plaintiffs clean up trash, something not required of role players of other races; Tarzi did not allow Plaintiff Alulu and other Plaintiffs to use their cell phones; and other conduct according to proof.

25. Plaintiff NYOTA BOKESE worked for the Employer Defendants approximately 20 times or more through 2016.  She was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at her and the other Plaintiffs; Tarzi would repeatedly state in Plaintiff Nyota Bokese presence that Africans "were dirty and smelly"; Tarzi would bring in food for the non-East African role players, but would never bring food for the Plaintiff Nyota Bokese or other Plaintiffs; Tarzi would allow the non-East African role players to drink bottled water, but would require Plaintiff Nyota Bokese and other Plaintiffs to drink tap water; Tarzi would not allow Plaintiff Nyota Bokese and other Plaintiffs access to drinking water while they were working, but allowed role players of other races access to drinking water; Tarzi ordered Plaintiff Nyota Bokese other Plaintiffs to pick up trash and clean the lunchroom and portable toilets, something not required of role players of other races; Tarzi told another female Plaintiff in Plaintiff Nyota Bokese's presence that she could not go to the bathroom when she had asked him to; Tarzi did not allow Plaintiff Nyota Bokese and other Plaintiffs to use their cell phone;

COMPLAINT

Tarzi kept Plaintiff Nyota Bokese and others past the end of their shift to make them clean up the lunchroom, clean the portable toilets, and pick up all the trash left by everyone, but not requiring non-East African role players to perform these duties; and other conduct according to proof.

26.   Plaintiff SHABANI BOKESE worked for the Employer Defendants 40 times or more through 2016.   He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi frequently referred to Plaintiff Shabani Bokese and other Plaintiffs as "dirty"; Tarzi ordered Plaintiff Shabani Bokese and other Plaintiffs to pick up trash and clean the lunchroom and restrooms, something not required of role players of other races; Tarzi refused to allow Plaintiff Shabani Bokese and other Plaintiffs to drink bottled water, he would make them drink from the tap; Tarzi made Plaintiff Shabani Bokese and other Plaintiffs remove plastic water bottles from the portable toilets; Tarzi would make Plaintiff Shabani Bokese and other Plaintiffs pick up the trash from all the tables, including the tables where only non-African role-players had eaten; Plaintiff Shabani Bokese was present when Tarzi would not allow another female Plaintiff to use another bathroom, because the one near her was overflowing, Tarzi told the female Plaintiff that she should use the overflowing bathroom and  just pee "standing up"; Tarzi would make fun of Plaintiff Shabani Bokese's and other Plaintiffs' food; Tarzi would not allow Plaintiff Shabani Bokese and other Plaintiffs access to drinking water while they were working, but allowed access to drinking water to role players of other races; Tarzi did not allow Plaintiff Shabani Bokese and other Plaintiffs to use their cell phones; and other conduct according to proof.

27.   Plaintiff MAYMUN EGAL worked for the Employer Defendants through 2016.   She was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at her and the other Plaintiffs; Tarzi made fun of Plaintiff Egal's food; Tarzi pulled Plaintiff Egal off jobs and made her clean up cigarette butts, but did not require non-East African employees to perform

these duties; Tarzi required plaintiff Egal and other Plaintiffs to pick up trash from the grounds and remove plastic bottles from portable toilets, without gloves but did not require non-East African employees to perform these duties; Tarzi would make Plaintiff Egal and other Plaintiffs clean the break room but did not require non-East African role players to perform these duties; Tarzi told a non-East African employee to tell Plaintiff Egal to take off her hajib, and that if she didn't take off her hijab, she would not be allowed to work; Tarzi ordered Plaintiff Egal, other Plaintiffs to pick up trash and clean the lunchroom and portable toilets, something not required of role players of other races; Tarzi refused to allow Plaintiff Egal to pray, but allowed other non-East African role players to pray; Tarzi would not allow Plaintiff Egal and other Plaintiffs to use their cell phone; Tarzi would not allow Plaintiff Egal and other Plaintiffs access to drinking water while they were working; Tarzi would keep Plaintiff Egal and others past the end of their shift to make them clean up the lunchroom, clean the portable toilets, and pick up all the trash left by everyone, but not requiring non-East African role players to perform these duties; and other conduct according to proof.

28.   Plaintiff ABDI HUSSEIN worked for the Employer Defendants through 2016. He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi would make fun of the Plaintiff Hussein's and other Plaintiffs' food; Tarzi would state that their food "was smelly"; Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi would make Plaintiff Hussein and other Plaintiffs clean the breakroom and outside areas, something not required of role players of other races; Tarzi would make Plaintiff Hussein and other Plaintiffs stay late and clean, something not required of role players of other races; Tarzi made the Plaintiff Hussein and other Plaintiffs end their breaks early; Tarzi made Plaintiff Hussein and other Plaintiffs work in the rain, something not required of role players of other races; on one occasion Tarzi made Plaintiff Hussein role-play a dead body on the ground when it was raining and Tarzi made him stay in the ground and would not allow him to get up; Tarzi refused to allow, or made it difficult for Plaintiff Hussein to pray, but allowed role

SPENCER JOHNSON MCCAMMON LLP

players of other races to pray without difficulty; Tarzi would make Plaintiff Hussein and other Plaintiffs clean up trash, something not required of role players of other races; Tarzi refused to allow Plaintiff Hussein and other Plaintiffs to drink bottled water, but allowed role players of other races to drink bottled water; Tarzi did not allow Plaintiff Hussein and other Plaintiffs to use their cell phones; and other conduct according to proof.

29.   Plaintiff FATUMA IBRAHIM worked for the Employer Defendants at least 25 times through 2016.  She was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at her and the other Plaintiffs; Tarzi told Plaintiff Ibrahim and other Plaintiffs that their food smelled bad; Plaintiff Ibrahim and other Plaintiffs would avoid eating in front of Tarzi because he looked angry and stared at them; Tarzi ordered Plaintiff Ibrahim and other Plaintiffs to pick up trash and clean the lunchroom and portable toilets, something not required of role players of other races; Tarzi criticized Plaintiff Ibrahim and other Plaintiffs for wearing the "jilbab," Tarzi would become angry and said they "shouldn't wear the jilbab;" Tarzi refused to allow Plaintiff Ibrahim to pray, but allowed non-East African role players to pray; Tarzi did not allow Plaintiff Ibrahim and other Plaintiffs to use their cell phone; Tarzi did not allow Plaintiff Ibrahim and other Plaintiffs access to drinking water while they were working, but allowed role players of other races access to drinking water; Tarzi would keep Plaintiff Ibrahim and others past the end of their shift to make them clean up the lunchroom, clean the portable toilets, and pick up all the trash left by everyone, but not requiring similarly situated non-East African employees to perform these duties; and other conduct according to proof.

30.   Plaintiff MOHAMED OSMAN JAMA worked for the Employer Defendants through 2016.  He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi would make fun of Plaintiff Jama's and other Plaintiffs' food; Tarzi would tell Plaintiff Jama and others that "their food smells bad"; Tarzi pushed plaintiff Jama; Tarzi shouted and cursed at him and the

12

other Plaintiffs; Tarzi would make Plaintiff Jama and other Plaintiffs clean the breakroom, outside areas, and portable toilets, something not required of role players of other races; Tarzi would make Plaintiff Jama and other Plaintiffs  stay late and clean, something not required of role players of other races; Tarzi made the Plaintiff Jama and others end their breaks early; Tarzi would make Plaintiff Hussein and other Plaintiffs work in the rain, something not required of role players of other races; On one occasion Tarzi made Plaintiff Hussein role-play a dead body on the ground when it was raining and Tarzi made him stay in the ground and would not allow him to get up; Tarzi refused to allow, or made it difficult for Plaintiff Hussein to pray, but allowed non-East African role players to pray without difficulty; Tarzi would make Plaintiff Jama and other Plaintiffs clean up trash, something not required of role players of other races; Tarzi refused to allow Plaintiff Jama and other Plaintiffs to drink bottled water, but allowed role players of other races to drink bottled water; Tarzi did not allow Plaintiff Jama and other Plaintiffs to use their cell phones; and other conduct according to proof.

31.  Plaintiff SHUKARI JAMA worked for the Employer Defendants at least 50 times through 2016.  She was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at her and the other Plaintiffs; Tarzi repeatedly said to her and other Plaintiffs: "What are you created from? What kind of creature created you? Can you explain to me the color of your body?"; Tarzi made fun of Plaintiff Jama's food; Tarzi pulled Plaintiff Shukari Jama and other Plaintiffs off the job and required them to clean the bathrooms, bathroom floors, sweep the floors, and collect cigarette butts, but did not require non-East African role players to perform these duties; Tarzi would require Plaintiff Jama and other Plaintiffs to sweep under him where he sat and he would say that they were dragging their dresses on the floor; Tarzi required Plaintiff Shukari Jama and other Plaintiffs to clean the grounds and remove plastic bottles from portable toilets, without gloves, but did not require non-East African role players to perform these duties; Tarzi on one occasion told Plaintiff to come out of the portable toilet she was cleaning, when she did

COMPLAINT

SPENCER JOHNSON MCCAMMON LLP

so, he slammed the door and hit her on the arm. Tarzi told Plaintiff Shukari Jama: "Take off this hijab. How can you work with this hijab? It is hot and you are stinking."; Tarzi refused to allow Plaintiff Shukari Jama to pray, but allowed non-African role players to pray; Tarzi would not allow Plaintiff Shukari Jama and other Plaintiffs to use their cell phone; Tarzi would not allow Plaintiff Shukari Jama and other Plaintiffs access to drinking water while they were working, but role players of other races were allowed access to drinking water; and other conduct according to proof.

32. Plaintiff ABDINUR JAMA worked for the Employer Defendants approximately 30 times or more through 2016. He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi ordered Plaintiff Abdinur Jama and other Plaintiffs to pick up trash and clean the lunchroom and portable toilets, something not required of role players of other races; Tarzi made Plaintiff Abdinur Jama and other Plaintiffs pick up plastic water bottles from the portable toilets; Tarzi did not allow Plaintiff Abdinur Jama and other Plaintiffs access to drinking water while they were working, but allowed role players of other races access to drinking water; Tarzi refused to allow Plaintiff Abdinur Jama and others to pray or delayed their ability to pray, but did not restrict the prayers of non-East African role players; Tarzi did not allow Plaintiff Abdinur Jama and other Plaintiffs to use their cell phones; and other conduct according to proof.

33. Plaintiff KERAI MBERWA worked for the Employer Defendants through 2016. She was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at her and the other Plaintiffs; Tarzi told Plaintiff Mberwa that she smelled bad; that she did not use deodorant, and that she did not wear a bra; Tarzi told Plaintiff Mberwa and other Plaintiffs that all Somali people smell; Tarzi would say to Plaintiff Mberwa and other Plaintiffs that they were "standing when they were peeing" and making a mess; Tarzi made fun of Plaintiff Mberwa's food; Tarzi made fun of Plaintiff Mberwa's dress; Tarzi took food that

14

Plaintiff had in the microwave and dumped it in the trash; Tarzi required Plaintiff Mberwa and other Plaintiffs to clean the grounds and remove plastic bottles from portable toilets, without gloves, but did not require non-East African role players to perform these duties;  Tarzi ordered Plaintiff and other Plaintiffs to pick up trash and clean the lunchroom and portable toilets, something not required of role players of other races; Tarzi refused to allow Plaintiff to pray, but allowed non-East African role players to pray; Tarzi would not allow Plaintiff Mberwa  and other Plaintiffs to use their cell phone; Tarzi would not allow Plaintiff Mberwa and other Plaintiffs access to drinking water while they were working, but allowed role players of other races access to drinking water; and other conduct according to proof.

34.   Plaintiff ABDI HAGI MODOWE worked for the Employer Defendants 20 times or more through 2016.  She was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at her and the other Plaintiffs; Tarzi ordered Plaintiff Modowe and other Plaintiffs to pick up trash and clean the lunchroom and portable toilets, something not required of role players of other races.  Tarzi told Plaintiff Modowe and others that they "must clean because they make it dirty; they are dirty and smelly people".   Tarzi told Plaintiff Modowe and another East African role player in Plaintiff Modowe's presence that: "You Africans bring stinky food!"; Tarzi told Plaintiff Modowe and another East African role player in Plaintiff Modowe's presence that she had to take off her jilbab; Tarzi refused to allow Plaintiff Modowe to pray, but allowed non-East African role players to pray; Tarzi,  refused to allow Plaintiff Modowe and other Plaintiffs to use their cell phone; Tarzi did not allow Plaintiff Modowe and other Plaintiffs access to drinking water while they were working, but allowed role players of other races access to drinking water; Tarzi kept Plaintiff Modowe and others past the end of their shift to make them clean up the lunchroom and clean the portable toilets, and pick up all the trash left by everyone, but did not require non-East African employees to perform these duties; and other conduct according to proof.

15

COMPLAINT

35.   Plaintiff LUL MOHAMED worked for the Employer Defendants 20 times or more through 2016.  He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi frequently referred to Plaintiff Mohamed and other Plaintiffs as "dark-skinned" and "slaves; Tarzi stated to Plaintiff Mohamed and other Plaintiffs that "Africans are bad people"; Tarzi stated to Plaintiff Mohamed and other Plaintiffs that they were "slaves" because of their African appearance; Tarzi ordered Plaintiff Mohamed and other Plaintiffs to pick up trash and clean the lunchroom and restrooms, something not required of role players of other races; Tarzi made Plaintiff Lul Mohamed and other Plaintiffs pick up plastic water bottles from the portable toilets; Tarzi would make fun of the Plaintiff Mohamed and other Plaintiffs' food, and would state that their food was "nasty", and that it "smelled bad"; Tarzi would make fun of the clothing worn by some female Plaintiffs stating that: the traditional clothing worn by the female was ugly and that they dressed like "Al Qaeda women"; Tarzi did not allow Plaintiff Mohamed and other Plaintiffs access to drinking water while they were working, but allowed role players of other races access to drinking water; Tarzi did not allow Plaintiff Mohamed and others to pray or delaying their ability to pray; Tarzi did not allow Plaintiff Mohamed and other Plaintiffs to use their cell phones; and other conduct according to proof.

36.   Plaintiff MOHAMMED MOHAMMED worked for the Employer Defendants through 2016.  He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi would make fun of the Plaintiff Mohammed's and other Plaintiffs' food; Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi would make Plaintiff Mohammed and other Plaintiffs clean the portable toilets, something not required of role players of other races; Tarzi made Mohammed and other Plaintiffs remove plastic water bottles from the portable toilets; Tarzi made Plaintiff  Mohammed and other Plaintiffs end their breaks early, not something required of non-East African role players; Tarzi refused to allow, or made it difficult for Plaintiff

16

Mohammed to pray, but allowed non-East African role players to pray; Tarzi would make Plaintiff Mohammed and other Plaintiffs clean up trash, something not required of role players of other races; Tarzi would make Plaintiff Mohammed and other Plaintiffs stay late and clean, something not required of role players of other races; Tarzi refused to allow Plaintiff Mohammed and other Plaintiffs to drink bottled water, but allowed role players of other races access to bottled drinking water; Tarzi did not allow Plaintiff Mohammed and other Plaintiffs to use their cell phones; and other conduct according to proof.

37. Plaintiff BARE MAHAMED MUSSE worked for the Employer Defendants through 2016. He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi would make fun of the Plaintiff Musse's and other Plaintiffs' food; Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi made the Plaintiff Musse and other Plaintiffs end their breaks early, something not required of non-East African role players; Tarzi refused to allow, or made it difficult for Plaintiff Musse to pray, but allowed non-African role players to pray; Tarzi would make Plaintiff Musse and other Plaintiffs work in the rain, something not required of role players of other races; Tarzi would make Plaintiff Musse and other Plaintiffs clean up trash, something not required of role players of other races; Tarzi would make Plaintiff Musse and other Plaintiffs clean the portable toilets, something not required of role players of other races; Tarzi made Musse and other Plaintiffs remove plastic water bottles from the portable toilets; Tarzi would make Plaintiff Musse and other Plaintiffs stay late and clean the grounds and portable toilets, something not required of role players of other races; Tarzi refused to allow Plaintiff Musse and other Plaintiffs to drink bottled water, but allowed role players of other races to drink bottled water; Tarzi did not allow Plaintiff Musse and other Plaintiffs to use their cell phones; and other conduct according to proof.

38. Plaintiff ABDI MWECHIWA worked for the Employer Defendants through mid-July 2016. He was subjected to a pattern of discrimination, harassment and

COMPLAINT

retaliation which included but was not limited to: Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi required Plaintiff Mwechiwa and other Plaintiffs to clean the break room, the lunchroom and restrooms, something not required of role players of other races; Tarzi made Plaintiff Mwechiwa and other East African role players wait longer than role players of other races for transportation between the office and IIT; Tarzi refused to allow Plaintiff Mwechiwa and other Plaintiffs to drive the Employer Defendants' vans between the office and IIT; Tarzi kept bottled water behind his desk and refused to allow Plaintiff Mwechiwa and other Plaintiffs to drink bottled water, but role players of other races were allowed to drink the bottled water; Tarzi made Plaintiffs and other East African role players remove plastic water bottles from the portable toilets, something not required of role players of other races; Tarzi would make Plaintiff Mwechiwa and other East African role players clean the grounds and portable toilets, something not required of role players of other races; Tarzi would make Plaintiff Mwechiwa and other East African role players clean the messes previously left by role players of other races; Tarzi would make Plaintiffs stay late and clean, something not required of role players of other races; Tarzi refused to allow, or made it difficult, for Plaintiff Mwechiwa and other Plaintiffs to pray, while allowing non-African role players to pray without difficulty; Tarzi would make fun of the East African role players' food, and even threw it in the trash, saying it smelled bad; Tarzi would talk about female East African role players, calling them smelly, saying that they pee standing up, and talked about their undergarments; Tarzi, referring the East African role players, would say "You guys are dirty and nasty"; Tarzi called the East African role players "slave people"; Tarzi would cut lunches of Plaintiff Mwechiwa and other East African role player short by telling them to go back to work, but would allow role players of other races to continue to eat; Tarzi improperly accused the East African role players of stealing a gun used in role play and refused to allow them to leave; Tarzi refused to provide snacks to East African role players the same as he provided them to non-East African role players; Tarzi would require East African role players to work in the rain and extreme heat, but

COMPLAINT

did not require this of role players of other races; when a role play scenario called for East African role players, Employer Defendants sometimes called non-East African role players to fill the roles; Employer Defendants refused to provide promotional opportunities to Plaintiff Mwechiwa.

39. Plaintiff LUCY NYIRARWAKA worked for the Employer Defendants through 2016.  She was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at her and the other Plaintiffs; Tarzi and others accused Plaintiff Nyirarwaka and other Plaintiffs of taking a gun from the field, and refused to let her and other East African role players leave Defendant Employers' office; Tarzi said to plaintiff: "What kind of life do you have?, you don't speak English, you don't know how to read, you don't know how to write, now you come and steal a gun. What life are you showing your kids?" Tarzi said to plaintiff: "You guys make everything dirty.  You guys make a mess"; Tarzi made fun of Plaintiff Nyirarwaka's food; Tarzi  made fun of Plaintiff Nyirarwaka's dress; Tarzi required plaintiff Nyirarwaka and other Plaintiffs to clean the grounds and remove plastic bottles from the portable toilets, without gloves, but did not require non-East African role players to perform these duties; Tarzi ordered Plaintiff and other Plaintiffs to pick up trash and clean the lunchroom and restrooms, something not required of role players of other races; Tarzi would pull Plaintiff Nyirarwaka and other Plaintiffs and make them clean up after role players of other races; Tarzi refused to allow Plaintiff  to pray, but allowed other non-East African role players to pray; Tarzi would not allow Plaintiff Nyirarwaka and other Plaintiffs to use their cell phone; Tarzi would not allow Plaintiff Nyirarwaka and other Plaintiffs access to drinking water while they were working; and other conduct according to proof.

40. Plaintiff HASSAN OMAR worked for the Employer Defendants approximately 45 times through 2016. He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi ordered Plaintiff Omar and other Plaintiffs

COMPLAINT

to pick up trash and clean the lunchroom and portable toilets, something not required of role players of other races; Tarzi, in Plaintiff Omar's presence, often complained about the food the Plaintiffs ate and stated how African food stank and it made him sick to smell it; Tarzi in Plaintiff Omar's presence often made insulting remarks about Somali women and the clothing they wore, he made fun of the jilbab and would get into the female Plaintiff's faces and tell them they shouldn't wear the jilbab at work; Tarzi would make the Plaintiff Omar and others work out in the rain, something not required of role players of other races; Tarzi made Plaintiff Omar remove plastic water bottles from the portable toilets; Tarzi did not allow Plaintiff Omar and other Plaintiffs access to drinking water while they were working; Tarzi did not allow Plaintiff Omar and others to pray, or delaying their ability to pray, but allowed non-African role players to pray without delay; Tarzi did not allow Plaintiff Omar and other Plaintiffs to use their cell phones; and other conduct according to proof.

41.   Plaintiff ANANIE RUGENZA worked for the Employer Defendants through 2016.  She was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at her and the other Plaintiffs; Tarzi allowed the non-East African role players to wait while he required the East African role players to clean the grounds; Tarzi required Plaintiff Rugenza and other Plaintiffs to clean up the messes left by other role players previously; Tarzi required Plaintiff Rugenza and other Plaintiffs to clean up a water cooler filled with urine, which was left by non-East African role players; Tarzi required Plaintiff Rugenza and other Plaintiffs to remove lids and plastic bottles from the portable toilet bowls, something not required of role players of other races; Tarzi required Plaintiff Rugenza and other Plaintiffs to clean dirty bathrooms, something not required of role players of other races; Tarzi made fun of Plaintiff Rugenza's food; Tarzi made fun of Plaintiff Rugenza's dress; Tarzi refused to allow Plaintiff Rugenza to pray, but allowed non-East African role players to pray; Tarzi would not allow Plaintiff Rugenza and other Plaintiffs to use their cell phone; Tarzi would not allow Plaintiff Rugenza and other Plaintiffs access to

20

drinking water while they were working, but allowed non-East African role players access to drinking water; and other conduct according to proof.

42.  Plaintiff MOHAMUD SALAD worked for the Employer Defendants through 2016.  He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi would make fun of the Plaintiff Salad's and other Plaintiffs' food; Tarzi would refer to Plaintiff Salad and other Plaintiffs as "black niggers" and "niggers"; Tarzi would refer to Plaintiff Salad and other Plaintiffs as "slaves"; Tarzi would refer to Plaintiff Salad and other Plaintiffs as "stinky black Africans"; Tarzi, when Plaintiff Salad was in the bathroom, shouted at him: "you don't have bathrooms in Africa, why are you sitting there"; Tarzi told Plaintiff Salad and other Plaintiffs that "they could just go to the bathroom outside"; Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi made the Plaintiff  Salad and other Plaintiffs end their breaks early, something not required of role players of other races; Tarzi would make Plaintiff Salad and other Plaintiffs  stay late and clean, something not required of role players of other races; Tarzi made Plaintiff Salad and other Plaintiffs remove plastic water bottles from the portable toilets; Tarzi would make Plaintiff Salad and other Plaintiffs clean the breakroom and outside areas, something not required of role players of other races; Plaintiff Salad was present when Tarzi yelled at another Plaintiff to take off her hajib; Tarzi, refused to allow, or made it difficult for Plaintiff Salad to pray, but allowed role players of other races to pray; Tarzi would make Plaintiff Salad and other Plaintiffs clean up trash, something not required of role players of other races; Tarzi refused to allow Plaintiff Salad and other Plaintiffs to drink bottled water, but allowed role players of other races to drink bottled water; Tarzi did not allow Plaintiff Salad and other Plaintiffs to use their cell phones; and other conduct according to proof.

43.  Plaintiff ALI HUSSEIN SHURIYE worked for the Employer Defendants through 2016.  He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi would make fun of the Plaintiff Shuriye's and other Plaintiffs' food; Tarzi shouted and cursed at him and the other

SPENCER JOHNSON MCCAMMON LLP

Plaintiffs; Tarzi would make Plaintiff Shuriye and other Plaintiffs clean the portable toilets, something not required of role players of other races; Tarzi made Shuriye and other Plaintiffs pick up plastic water bottles from the portable toilets;  Tarzi would make Plaintiff Shuriye stay late and clean, something not required of role players of other races; Tarzi refused to allow, or made it difficult for Plaintiff Shuriye to pray, but allowed non-East African role players to pray; Tarzi would make Plaintiff Shuriye and other Plaintiffs leave from lunch early, something not required of role payers of other races; Tarzi ordered Plaintiff Shuriye and other Plaintiffs to pick up trash and clean the lunchroom and restrooms, something not required of role players of other races; Tarzi refused to allow Plaintiff Shuriye and other Plaintiffs to drink bottled water, he would make them drink from the tap, but role players of other races were allowed to drink the bottled water; Tarzi  made the Plaintiff Shuriye and others end their breaks early; Tarzi did not allow Plaintiff Shuriye and other Plaintiffs to use their cell phones; and other conduct according to proof.

44.  Plaintiff MOHAMUD ABDI SHURE worked for the Employer Defendants through 2016.  He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi would make fun of the Plaintiff Shure's and other Plaintiffs' food; Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi would make Plaintiff Shure and other Plaintiffs clean the bathrooms, something not required of role players of other races; Tarzi made Shure and other Plaintiffs remove plastic water bottles from the portable toilets, something not required of role players of other races; Tarzi made the Plaintiff Shure and other Plaintiffs clean the dining area, something not required of role players of other races; Tarzi would make Plaintiff Shure and other Plaintiffs  stay late and clean, something not required of role players of other races; Tarzi made the Plaintiff  Shure and others end their breaks early; Tarzi would make Plaintiff Shure and other Plaintiffs work in the rain, something not required of role players of other races; Tarzi refused to allow, or made it difficult for Plaintiff Shure to pray, but allowed non-East African role players to pray without

COMPLAINT

difficulty; Tarzi would make Plaintiff Shure and other Plaintiffs clean up trash, something not required of role players of other races; Tarzi refused to allow Plaintiff Shure and other Plaintiffs to drink bottled water, but allowed role players of other races to drink bottled water; Tarzi did not allow Plaintiff Shure and other Plaintiffs to use their cell phones; and other conduct according to proof.

45.   Plaintiff SEMIR DESTA TESEMA worked for the Employer Defendants 100 times or more through 2016.  Because he is also fluent in Arabic, he sometimes worked with the Iraqi role-players as well.  He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi would frequently ask him why he worked with the Plaintiffs; Tarzi told Plaintiff that he "shouldn't work with the other Plaintiffs; When Plaintiff Tesema would work with the Iraqi role players, Tarzi would single Plaintiff out of the group and order him to go around cleaning up the area, picking up trash and cigarette butts due to Plaintiff's race;  Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi ordered Plaintiff Tesema and other Plaintiffs to pick up trash and clean the lunchroom and restrooms, something not required of role players of other races; Tarzi made Plaintiff Tesema and other Plaintiffs remove plastic water bottles from the portable toilets; Tarzi would make fun of the Plaintiff Tesema's and other Plaintiffs' food; Tarzi would not allow Plaintiff Tesema and other Plaintiffs access to drinking water while they were working, but allowed role players of other races access to drinking water; Tarzi did not allow Plaintiff Tesema and other Plaintiffs to use their cell phones; and other conduct according to proof.

46.  Plaintiff ABDULLAHI WARSAME worked for the Employer Defendants approximately 21 times through 2016. He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi ordered Plaintiff Warsame and other Plaintiffs to pick up trash and clean the lunchroom and restrooms, something not required of role players of other races; Tarzi, in Plaintiff Warsame's presence, often complained about the food the Plaintiffs ate; Tarzi, in Plaintiff Warsame's presence,

23

often made insulting remarks about Somali women and the clothing they wore; Tarzi made Plaintiff Warsame, Plaintiff pick up plastic water bottles from the portable toilets; Tarzi did not allow Plaintiff Warsame and other Plaintiffs access to drinking water while they were working, but allowed role players of other races access to drinking water; Tarzi did not allow Plaintiff Warsame and others to pray, or delaying their ability to pray, but non-East African role players were allowed to pray without delay; Tarzi did not allow Plaintiff Warsame and other Plaintiffs to use their cell phones; and other conduct according to proof.

47.  Plaintiff ABDI OMAR YUSAF worked for the Employer Defendants through 2016.  He was subjected to a pattern of discrimination, harassment and retaliation which included but was not limited to: Tarzi shouted and cursed at him and the other Plaintiffs; Tarzi would tell plaintiff Yusaf and other Plaintiffs that: "your food smells bad; and your women pee while they are standing; Tarzi would make Plaintiff Yusaf and other Plaintiffs leave from lunch early, something not required of role players of other races; Tarzi ordered Plaintiff Yusaf and other Plaintiffs to pick up trash and clean the lunchroom and restrooms, something not required of role players of other races; Tarzi refused to allow Plaintiff Yusaf and other Plaintiffs to drink bottled water, he would make them drink from the tap, but allowed tole players of other races to drink bottled water; Tarzi made Yusaf and other Plaintiffs pick up plastic water bottles from the portable toilets; Tarzi would make Plaintiff Yusaf and other Plaintiffs pick up the trash from all the tables, including the tables where only non-African role-players had eaten; Tarzi would make fun of the Plaintiff Yusaf's and other Plaintiffs' food; Tarzi did not allow Plaintiff and other Plaintiffs to use their cell phones; and other conduct according to proof.

## JURISDICTION AND VENUE

48.  This Court has jurisdiction over this action under 28 U.S.C. §1331 conferring original jurisdiction upon this Court for actions arising under the laws of the United States; Public Health and Welfare, 42 U.S.C. 1981.

24

SPENCER JOHNSON McCAMMON LLP

49.  Venue is proper in this district per 28 U.S.C. §1391.  A substantial portion of the acts alleged in this complaint occurred in California and within this judicial district, and  Plaintiffs allege, upon information and belief, that the Employer Defendants maintain offices, conduct business, and reside in this district, and.

50.  Intra district assignment is proper in the Southern District, San Diego because a substantial part of the events and omissions that gave rise to these claims occurred in San Diego County.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. §1981
### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

51.  Plaintiffs incorporate all paragraphs above.

52.  All plaintiffs are members of a racial or ethnic minority as afore pled and are therefore entitled to the protections of 42 U.S.C. §1981.

53.  All Plaintiffs were employed at all relevant times by Employer Defendants.

54.  The Employer Defendants are subject to the provisions of 42 U.S.C. §1981

55.  42 U.S.C. §1981 precludes discrimination and harassment based on a person's race or ethnicity with respect to the making, performance, and termination of contracts

56.  42 U.S.C. §1981 precludes retaliation for engaging in protected activities.

57.  The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

58.  The Defendants' discrimination and harassment against all plaintiffs named herein is in violation of the rights of plaintiffs as afforded them by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

59.  The Defendants' retaliation against all plaintiffs named herein is in violation of the rights of plaintiffs as afforded them by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

SPENCER JOHNSON MCCAMMON LLP

25

60.   By the conduct described above, the defendants intentionally deprived each Plaintiff of the same rights contemplated by the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, in violation of 42 U.S.C. §1981.

61.   By the conduct described above, the defendants intentionally retaliated against each Plaintiff for engaging in protected activities in violation of 42 U.S.C. §1981.

62.   As a proximate result of Defendants violation of 42 U.S.C. §1981 each plaintiff suffered general and emotional distress damages including anguish, humiliation, distress, inconvenience and loss of enjoyment of life past and future in an amount according to proof.

63.   As a proximate result of Defendants violation of 42 U.S.C. §1981 each plaintiff lost employment benefits, on information and belief, including lost wages and fringe benefits in an amount in excess of the minimum jurisdiction of the court and according to proof.

64.   As a proximate result of Defendants violation of 42 U.S.C. §1981 each Plaintiff was required to and did retain attorneys and is therefore entitled to an award of attorney's fees pursuant to 42 USC 1988 and other provisions according to proof.

65.   The afore pled conduct of the Employer Defendants constitutes oppression, fraud, and malice thereby entitling all Plaintiffs to an award of punitive damages. Plaintiffs are informed and believe, and thereon allege, that the Employer Defendants had advance knowledge of the unfitness of their managerial and supervisorial employees including, but not limited to Tarzi, but employed them nonetheless with a conscious disregard of the rights and safety of the Plaintiffs and others, or ratified or authorized the said conduct.  Plaintiffs are further informed and believe, and thereon allege, that these acts of oppression, fraud, or malice or act of, ratification or authorization were on the part of a managing agent or owner acting on behalf of the Employer Defendants.

/ / /

/ / /

COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.      Damages for lost employment income and benefits, past and future, according to proof;

2.      General damages for pain and suffering past and future according to proof;

3.      Damages for past and future medical expenses according to proof;

4.      Attorney's fees according to proof;

5.      Costs of suit incurred herein;

6.      Punitive and exemplary damages;

7.      Pre- and post-judgment interest as provided by law; and

8.      Such other and further legal and equitable remedies as this Court deems necessary, just and proper.

Dated: June 4, 2019                    SPENCER JOHNSON MCCAMMON LLP

                                       By: _____
                                           A. Melissa Johnson,
                                           Attorneys for Plaintiffs

SPENCER JOHNSON MCCAMMON LLP

27

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

S<small>PENCER</small> J<small>OHNSON</small> M<small>C</small>C<small>AMMON</small> <small>LLP</small>

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated: June 4, 2019                    S<small>PENCER</small> J<small>OHNSON</small> M<small>C</small>C<small>AMMON</small> <small>LLP</small>

By: _____
A. Melissa Johnson,
Attorneys for Plaintiffs

28

COMPLAINT